## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

AEROSTAR AIRPORT HOLDINGS, LLC

    Plaintiff,

        v.

AAA CAR RENTAL, INC. d/b/a ALLIED TRUCK AND CAR RENTAL; KENNETH AUTO RENTAL, INC. d/b/a KENNETH CAR RENTAL; CHARLIE CAR RENTAL, INC.; TARGET RENT A CAR, INC.; AMERICAN CAR AND TRUCK RENTAL, INC. d/b/a AMERICAN CAR RENTAL; MORE AUTOMOTIVE PRODUCTS, INC. D/B/A DOLLAR RENT A CAR; ABAB CORP. D/B/A PAYLESS CAR RENTAL; ASOCIACIÓN DE ARRENDADORES DE AUTOS, INC.; RHAMSES CARAZO VILLA; JOHN DOE; RICHARD ROE; CORPORATION A; CORPORATION B; CORPORATION C;

    Defendants.

Civil No.:

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT**:

Plaintiff, Aerostar Airport Holdings, LLC. ("Aerostar"), through its undersigned attorneys, and for its Complaint in this matter, states, alleges and prays as follows:

### NATURE OF THE CASE

1.  This suit is brought under Section 1 of the Sherman Act, 15 U.S.C. §1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, for treble damages and injunctive relief as a result of an illegal and anticompetitive combination and conspiracy between and

among defendants to suppress and eliminate competition in the market for car rental services to persons traveling in interstate commerce in and out of Puerto Rico through the Luis Muñoz Marín International Airport in Carolina, Puerto Rico (the "Airport"), with the purpose and effect of restraining trade in that market. The combination and conspiracy allowed defendants to increase profits at the expense of Aerostar and other car rental service providers by exercising a group boycott against Aerostar and fixing the prices at which they deal with Aerostar to gain access to the Airport.   It is also brought under relevant provisions of the laws of the Commonwealth of Puerto Rico.

2.      Beginning at least as early as September 2013 and continuing through the present (the "relevant period"), defendants and their coconspirators, who had previously been competing directly in the market for car rental services to persons traveling in interstate commerce through the Airport, through meetings and other communications and through the Asociación de Arrendadores de Autos de Puerto Rico, Inc. (the "Association"), entered into agreements to negotiate collectively with Aerostar the rates at which defendants would gain access to the Airport, run and operated by Aerostar, and to horizontally fix those prices. Defendants have consistently refused to deal individually with Aerostar in the negotiation of said rates and have publicly and privately insisted in a concerted course of action, in violation of the antitrust laws.

3.      The conspiracy between defendants served to eliminate competition, including price competition, between the defendants in the market for car rental services to persons traveling in interstate commerce, and otherwise caused harm to competition, including obtaining an unfair advantage over those market players not party to the conspiracy and decreasing output of said services, which in turn harms consumers. Aerostar has also been harmed by being unable to collect charges for access to the Airport by the defendants, off-Airport rental car service

providers, which it has a right to collect pursuant to applicable regulation. This in turn also harms consumers by decreasing the quality and availability of Airport services, as well as presenting a security and safety issue within the Airport.

## THE PARTIES

4.      Plaintiff Aerostar is a limited liability company organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Aerostar is the operator of the Airport by virtue of a Lease Agreement executed between the Puerto Rico Ports Authority (the "Ports Authority") and Aerostar on July 24, 2012, and subsequent amendments (the "Lease Agreement").

5.      Defendant AAA Car Rental, Inc. d/b/a Allied Truck and Car Rental ("Allied") is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Allied is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, Allied routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

6.      Defendant Kenneth Auto Rental, Inc. d/b/a Kenneth Car Rental, Inc. ("KAR") is a corporation formerly known as Cabrera Auto Rental, Inc., organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. KAR is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, KAR routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

7.      Defendant Charlie Car Rental, Inc. is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Charlie is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport.

3

In order to engage in said services, Charlie routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

8.      Defendant More Automotive Products, Inc. d/b/a Dollar Rent A Car ("Dollar") is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Dollar is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, Dollar routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

9.      Defendant ABAB Corp. d/b/a Payless Car Rental ("Payless") is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Payless is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, Payless routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico

10.     Defendant Target Rent A Car, Inc. ("Target") is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. Target is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, Target routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

11.     Defendant American Car and Truck Rental, Inc. d/b/a American Car Rental ("American") is a corporation organized under the laws of Puerto Rico with its principal place of business in Puerto Rico. American is engaged in the provision of car rental services to persons traveling in interstate commerce through the Airport. In order to engage in said services, American routinely accesses the Airport to pick up or return customers traveling into and out of Puerto Rico.

12.    Defendant Association is a corporation organized under the laws of Puerto Rico, with its principal place of business in Puerto Rico.  The Association is an entity composed of and controlled by most, if not all, the defendant car rental companies and its President Rhamses Carazo Villa.

13.    Defendant Rhamses Carazo Villa ("Carazo") is the owner and president of Defendant Allied. For the period from at least October 2013 to the present, Carazo has also been the president of the Defendant Association. Since at least October 2013, Carazo exchanged telephone calls and coordinated meetings among Association members at his office, and has actively promoted and participated in defendants' agreement to refuse to deal individually with Aerostar, and conspired and acted in concert with defendants to negotiate the assessment of the Access Fee and the execution of their respective agreements.

14.    Defendants John Doe and Richard Roe, as well as Corporation A, B and C, are persons or entities whose identity is presently unknown and who participated as coconspirators in the violations alleged herein and for which Aerostar seeks relief, and performed acts and made statements in furtherance thereof.

15.    Whenever this complaint refers to a statement or transaction of any corporation or entity, the allegation means that the corporation or entity acted by and through its directors, members, partners, officers, employees, affiliates, or agents, while engaged in the management, direction, control or conduct of the corporation's or entity's business and acting within its scope of authority.

## JURISDICTION AND VENUE

16.    This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 & 1337, and 15 U.S.C. §§1 & 15.  The Court has supplemental jurisdiction over the claims brought under

Puerto Rico law because those claims form part of the same case or controversy as the claims under federal law. 28 USC § 1367 (a).

17.     Venue is proper in this district, pursuant to 15 U.S.C. §§15 & 22, and 28 U.S.C. §1391(b) and (c), as (i) one or more of the defendants reside, transact business or are found herein, (ii) there is personal jurisdiction over them because each has transacted business, maintained continuous and systematic contacts, purposefully availed themselves of the benefits of doing business, and committed acts in furtherance of the alleged combination and conspiracy in Puerto Rico, and (iii) a substantial part of the events giving rise to the claim occurred in Puerto Rico.

## INTERSTATE TRADE AND COMMERCE

18.     Defendants' conduct has taken place within the flow of and substantially affected interstate commerce between the continental United States and Puerto Rico. For the relevant period, defendants have been engaged in the provision of car rental services to persons traveling in interstate commerce. In order to engage in said services, defendants routinely access the Airport to pick up or return customers traveling into and out of Puerto Rico. The object of defendants' combination and conspiracy is to restrict output and fix prices regarding the authorized transportation of passengers traveling in interstate commerce, by conspiring and carrying out concerted actions against Aerostar and fixing the rates at which defendants gain access to the Airport.

## RELEVANT MARKET

19.     For those claims that may require market definition, the relevant market for purposes of these allegations is the market for the provision of car rental services to persons traveling in interstate commerce into and out of Puerto Rico through the Airport.

6

20.    At all relevant times, prior to entering into the combination and conspiracy amongst themselves as alleged herein, defendants competed in the relevant market.

21.    The combination and conspiracy alleged herein is *per se* illegal and requires no allegation of market definition.

22.    Plaintiff also alleges in the alternative, that the combination is anticompetitive and illegal under the Rule of Reason.

23.    Among other facts alleged herein, the defendants' conduct eliminated competition between direct competitors in the market for the provision of car rental services to persons traveling in interstate commerce into and out of the Airport, and allowed defendants to engage in a group boycott and horizontally fix the rates at which they gain access to the Airport.

## THE FACTS

24.    The Airport is owned by the Ports Authority. The Ports Authority operates pursuant to its Organic Law. 23 PR Laws Ann. §333 *et seq*. The Ports Authority operated the Airport until it was leased to Aerostar in July of 2012.

25.    Pursuant to its Organic Law, the Ports Authority has the power "[t]o determine, fix, alter, impose and collect rates, fees, rents and other charges for the use of the facilities or services of the Authority…" 23 PR Laws Ann. §336(l)(1).

26.    Pursuant to section 8.4 of Puerto Rico Regulation No. 2923, which regulates the operation of airports:

a. No person shall do the following in or within air operation areas or public access areas of an airport:
…
5. Offer public transportation services to passengers by means of taxis, limousines, public conveyance cars, tour or rented vehicles, except in areas specified and assigned for such purposes by the Authority.
b. Exempted from the above are the following persons and/or entities:

1. Natural or artificial persons authorized by contract by the Puerto Rico Ports Authority.

27.     In addition, Section 5.11 of Puerto Rico Regulation No. 2923 provides that "[n]o person shall engage in any business or commercial activity of any nature whatsoever at the airports except with the approval of the Executive Director and under such terms and conditions as may be prescribed."

28.     On May 22, 2012, the Ports Authority enacted Puerto Rico Regulation No. 8205 "To Regulate the Operation of Car Rental Businesses Located Outside the Airport within Airport Premises" (translation ours).

29.     Article VI, Section 1(A) of Regulation No. 8205 forbids car rental businesses located outside of the Airport from providing services in the Airport without first (1) executing an Agreement with the Ports Authority and (2) obtaining a permit.

30.     Article VI, Section 2 of Regulation No. 8205 requires car rental businesses located outside of the Airport to pay an "Access Fee" (as said term is defined in the Regulation) prior to conducting business within Airport premises.

31.     Article VI, Section 6 of Regulation No. 8205 provides that the Ports Authority may delegate on an "Operator" (as said term is defined in Regulation No. 8205) the authority to impose and collect the Access Fee provided for in Regulation No. 8205.

32.     On July 24, 2012, Aerostar and the Ports Authority executed a Lease Agreement for the lease and operation of the Airport.

33.     Aerostar is the current operator of the Airport pursuant to the Lease Agreement and is an "Operator" as that term is defined in Regulation 8205.

34.     Section § 7.1 of the Lease Agreement provides as follows, regarding Aerostar's authority to establish and collect fees for use of Airport facilities:

"The Lessee shall, at all times during the Term, have the right to establish, collect, retain and enforce payment of all fees, rents, tariffs, revenues and any other type of charge for use of or in connection with the LMM Airport Facility to the fullest extent permitted by Section 10(c) of the Act, subject to all applicable requirements of Law […]".

35.   Section § 7.2 of the Lease Agreement provides as follows, regarding Aerostar's authority to establish and collect fees for Access and use of the Airport premises to companies that offer ground transportation services:

"Specific Authorizations.

Without limiting Section 7. 1, the Lessee shall have the sole and specific right to charge, assess, collect, seek and apply the following fees, charges, revenues and grants: […]

(d) *Ground Transportation Private Access and Use Fees.* The Lessee shall have the right, subject to applicable Law, to collect any private access and/or use fees for ground transportation at the LMM Airport Facility".

36.   Aerostar took possession of the Airport on February 27, 2013 as lessee and operator of the same.

37.   Around September of 2013, Aerostar began the process of negotiating contracts with defendants and other car rental businesses located outside of the Airport for the operation of their business within Airport premises, including the assessment and collection of the Access Fee.

38.   Some of the Airport car rental businesses not listed as defendants in this complaint have executed agreements with Aerostar in order to transact business inside Airport premises pursuant to Regulation No. 8205.

39.   Some of the named defendants in this case initially met individually with representatives from Aerostar in order to comply with the mandate of Regulation No. 8205. However, subsequently, and beginning at least around October of 2013, defendants have

systematically refused to deal individually with Aerostar, and have since conspired and acted in concert to negotiate the assessment of the Access Fee and the execution of their respective agreements.

40. In fact, at least one of the defendants agreed to execute an agreement with Aerostar in compliance with the referenced regulations, but on the date of the closing recanted under pressure from the Association and its members.

41. On February 19, 2014, the president of co-defendant Charlie Car Rental, Mr. José A. Martínez, was supposed to meet with a representative from Aerostar to execute the relevant agreement. However, on the day before, at around 6:00 PM, he received a call from the president of the Association, Defendant Carazo, who is also the principal of codefendant Allied, telling him that the Association was organizing in order to act in concert with regards to the contracts proposed by Aerostar, including the Access Fee. In light of the foregoing, Charlie Car Rental decided not to execute an agreement with Aerostar. **Exhibit 1**.

42. Subsequently, on February 28, 2014 counsel for the Association wrote to Aerostar on behalf of the Association and defendants, proposing joint terms for the negotiation of the agreements with Aerostar including a fixed rate for access to the Airport. **Exhibit 2**.

43. Aerostar has continually sought to negotiate individually with codefendants. However, co-defendants have concertedly and systematically refused to deal individually with Aerostar and to date insist in negotiating joint terms, including the Access Fee, through the Association.

44. Further, to date defendants continue to enter the Airport premises and conduct business at the Airport without a permit and without a contract with Aerostar, in clear violation of Regulation No. 8205.

## COUNT ONE: SHERMAN ACT SECTION ONE

45.     Aerostar repeats and realleges the allegations contained the previous paragraphs, as though fully set forth herein.

46.     Defendants entered into a *per se* illegal group boycott and horizontal price fixing agreement, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1, when they participated in a conspiracy to suppress and eliminate competition in the market for the provision of car rental services to persons traveling in interstate commerce into and out of Puerto Rico through the Airport by refusing to deal individually with Aerostar and collectively negotiating and agreeing on the Access Fee to be charged in order to gain access to the Airport.

47.     In the alternative, if evaluated under the Rule of Reason, defendants' combination and conspiracy is an unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.

48.     Prior to their agreement, all co-defendants members of the Association were actual competitors in the market for the provision of car rental services to persons traveling in interstate commerce into and out of Puerto Rico through the Airport.

49.     Defendants shared a conscious commitment to a common scheme designed to achieve the unlawful objective of allocating the relevant market and fixing prices therein.

50.     Their agreement created significant anticompetitive effects and no procompetitive benefits. Defendants' refusal to deal with Aerostar has the effect of decreasing output, i.e. the availability of authorized car rental services in the Airport, which decreases the availability of said services to consumers and increases the price of legally provided services. Also, defendants' concerted refusal to deal provides them with an unfair advantage over those market players not

11

party to the conspiracy who provide the same services legally with a permit, given than those competitors who are subject to the Access Fee will not be able to compete in equal footing, which can also lead to decreased output and higher prices to consumers of legally provided services.

51.     In addition, the continuous provision of services by defendants without a permit and a valid contract presents a safety and security issue at the Airport, since the permitting process is the way to control the access of vendors, suppliers of services and other third parties to restricted areas of the Airport or other areas not accessible to the general public.

52.     Defendants' group boycott and price fixing scheme is a naked restraint of trade; it was not ancillary to any legitimate business collaboration.

53.     Defendants' agreement and conspiracy eliminated competition in the market for the provision of car rental services to persons traveling in interstate commerce into and out of Puerto Rico through the Airport. To the extent there were any procompetitive benefits resulting from the agreement, they do not outweigh the agreement's anticompetitive effects.

54.     During the period between September 2013 and June 30, 2015, and in fact to the present day, defendants accessed the Airport without a permit and without paying the Access Fee, which resulted in a loss to Aerostar estimated at no less than $200,000.00 per month, which amount increases daily.

55.     Aerostar has suffered injury of the type that the antitrust laws are designed to punish and remedy. Defendants' refusal to deal with Aerostar and pay the Access Fee directly affects the operation of the Airport, including not only the availability and quality of Airport services, but also the administration of the Airport and the permitting and access protocols and procedures, which could have a direct bearing on passenger safety. In addition, pursuant to the

Lease Agreement executed between Aerostar and the Ports Authority, the Ports Authority is entitled to receive a share of the revenues generated from the operation of the Airport at relevant time periods. To the extent defendants' refusal to deal and pay the Access Fee results in a decrease in revenues from the operation of the Airport, the People of Puerto Rico suffer harm inasmuch as any expected return from the lease of the Airport by the Ports Authority is decreased. Aerostar is an efficient enforcer of the antitrust claims made herein.

56.     Aerostar seeks to recover from defendants treble damages, costs of suit and attorney's fees, for injuries to its property and business.

**COUNT TWO:  ACTS IN RESTRAINT OF TRADE UNDER
PUERTO RICAN LAW**

57.     Aerostar repeats and reiterates the allegations contained in the previous paragraphs, as though fully set forth herein.

58.     The actions of defendants constitute illegal actions in restraint of trade prohibited by Puerto Rico law.  10 LPRA §258.

59.     The actions of defendants constitute unfair competition in violation of Puerto Rico law, 10 LPRA §259.

60.     Aerostar has been harmed in its business by the actions of defendants and is therefore entitled to recover three (3) times the damages suffered, plus costs and attorneys' fees. 10 LPRA §268(a).

**COUNT  THREE: DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES**

61.     Aerostar repeats and reiterates the allegations contained in the previous paragraphs, as though fully set forth herein.

62.     The actions of defendants described above constitute violations of Puerto Rico laws and regulations, including Sections 5.11 and 8.4 of Regulation No. 2923, and Article VI of Regulation 8205.

63.     Aerostar is entitled to, and seeks a declaration from this Court that defendants' conduct violates these provisions of Puerto Rico laws and regulations.

64.     Aerostar has been harmed in its business by the actions of defendants in violation of these provisions of Puerto Rico law and regulations, and is therefore entitled to recover the damages suffered, plus costs and attorneys' fees.

65.     Section 3 of Article VI of Regulation No. 8205 provides that non-compliance with its provisions will result, among other things, in the suspension or revocation of the non-complying car rental company's rights to have access to the Airport.

66.     Aerostar also requests preliminary and permanent injunctive relief as set forth in detail below.

**COUNT FOUR: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

67.     Aerostar repeats and reiterates the allegations contained in the previous paragraphs, as though fully set forth herein.

68.     Defendants are currently accessing the Airport without a permit and a contract with Aerostar, in violation of applicable laws and regulations.

69.     Defendants have engaged in a conspiracy to horizontally fix the rates at which access to the Airport is allowed and have concertedly refused to deal with Aerostar individually, foreclosing competition in the market for the provision of car rental services to persons traveling in interstate commerce into and out of Puerto Rico through the Airport, in violation of the

antitrust laws. This conspiracy will continue undeterred unless enjoined by the Court, as there is no other adequate remedy at law.

70.     Defendants continued access into and through the Airport without individually obtaining a permit from Aerostar is not only against the law and applicable regulations, but also presents a security and safety issue in the operation of the Airport, which directly an negatively impacts the public interest.

71.     Aerostar will suffer irreparable harm if defendants' anticompetitive acts and other violations of Puerto Rico laws and regulations are not enjoined by the court, among other reasons, because defendants' concerted actions allow them unrestricted access to the Airport without obtaining a permit, individually executing a contract with Aerostar or otherwise complying with applicable standards, rules or regulations.

72.     Aerostar hereby requests that the Court enter a preliminary and permanent injunction, pursuant to Section 16 of the Clayton Act, 15 U.S.C. §26, 10 LPRA §269a, Fed.R.Civ.P. 65, and its inherent powers to prevent further irreparable damage caused by defendants' violations of Puerto Rico laws and regulations: (a) ordering defendants to refrain from negotiating collectively with Aerostar and fix the rates at which access is granted to the Airport; and (b) ordering defendants to refrain from accessing the Airport unless and until they obtain a permit and a contract with Aerostar, individually, in accordance with applicable rules and regulations.

**WHEREFORE**, Aerostar respectfully prays for the following relief:

1)     a declaration that the combination or conspiracy, and the acts done in furtherance thereof by defendants and their coconspirators, be adjudged to have been in violation of Section

1 of the Sherman Act, 15 U.S.C. § 1; and Article 1 of the Puerto Rico Antimonopoly Act.  10 LPRA §258.

2)      that judgment be entered for plaintiff and against defendants, jointly and severally, for three times the amounts of damages sustained by Aerostar, as allowed by law, together with the costs of this action and reasonable attorney's fees;

3)      a declaration that the actions of defendants described above constitute violations of Puerto Rico laws and regulations, including Sections 5.11 and 8.4 of Regulation No. 2923, and Article VI of Regulation 8205;

4)      that judgment be entered for plaintiff and against defendants, jointly and severally, for the amount of damages sustained by Aerostar, as allowed by law, together with the costs of this action and reasonable attorney's fees;

5)      that an order for preliminary and permanent injunctive relief be entered against defendants (a) requiring defendants to refrain from negotiating collectively with Aerostar and fix the rates at which access is granted to the Airport; and (b) requiring defendants to refrain from accessing the Airport unless and until they obtain a permit and a contract with Aerostar, individually, in accordance with applicable rules and regulations; and

6)      that Aerostar have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 17th day of July, 2015.

FIDDLER GONZÁLEZ & RODRÍGUEZ, P.S.C.
P.O. Box 363507
San Juan, Puerto Rico  00936-3507
Tel:  (787) 759-3163
Fax:  (787) 250-7545

s/ Luis A. Oliver
LUIS A. OLIVER
USDC-PR No. 209204
loliver@fgrlaw.com


s/Salvador Antonetti Zequeira
SALVADOR ANTONETTI ZEQUEIRA
USDC-PR No. 113910
santonet@fgrlaw.com

s/ José L. Ramírez-Coll
JOSÉ L. RAMÍREZ-COLL
USDC-PR No. 221702
jramirez@fgrlaw.com

## Verification

I, Flor del Rio Loranca, Commercial Manager of plaintiff, Aerostar Airport Holdings, LLC, state under penalty of perjury under the laws of the United States of America that the factual averments of this Verified Complaint are true to the best of the information I have received, which I, in good faith, believe is true.

In San Juan, Puerto Rico, this 17th day of July, 2015.

_____
Flor del Rio Loranca